**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | |
|---|---|
| BRIAN MATTHEW MCCALL, and KYLE BIEDERMANN, <br><br> Plaintiffs, <br><br> v. <br><br> NANCY PELOSI, Speaker of the United States House of Representatives; KAMALA HARRIS, President of the United States Senate; PATRICK J. LEAHY, President Pro Tempore of the United States Senate; and CHARLES SCHUMER, United States Senate Majority Leader, <br><br> Defendants. | Case No. 22-cv-0093 (XR) |

**DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Defendants respectfully move this Court for an order dismissing Plaintiffs' First Amended Complaint (1st Am. Compl.), ECF No. 30.[1]  The bases for this motion are set forth below.

**MEMORANDUM IN SUPPORT**

Plaintiffs argue that "at least 36" states have requested a constitutional convention, 1st Am. Compl. ¶ 2, and thus that Congress is required to convene one.  In support, Plaintiffs point

---

[1] The Court previously extended the parties' deadlines to conduct a Rule 26(f) conference and to submit a Rule 26(f) report, proposed scheduling order, and magistrate jurisdiction consents until "30 days after the Court rules on Defendants' pending motion to dismiss."  Text Order (August 30, 2022).  For substantially the same reasons previously discussed, Joint Mot. Extend, ECF No. 25, Defendants respectfully suggest it would be appropriate to continue to extend those deadlines until 30 days after the Court rules on this motion to dismiss the First Amended Complaint.

to a list of "selected" state enactments published on the website of the Clerk of the House of Representatives with the note that the selected enactments "purport[]" to be applications or rescissions of applications by states for constitutional conventions. Selected Memorials, https://clerk.house.gov/SelectedMemorial; *see also* Ex. A to 1st Am. Compl., ECF No. 28-2. But the question of how many valid state enactments currently exist, or other merits issues, need not be resolved because Plaintiffs' claims are foreclosed by a variety of jurisdictional hurdles.

First and foremost, Plaintiffs can identify no injury that they have suffered due to the non-occurrence of a constitutional convention. That is necessarily the case because any purported injury would be purely speculative (or unredressable)—even if a constitutional convention were held, it may not result in any proposed amendments to the Constitution; even if it did result in proposed amendments, they may not ultimately be ratified by the states; and even if one or more were ratified by the states, they may not satisfy Plaintiffs (or affect Plaintiffs at all). Accordingly, Plaintiffs lack Article III standing. Indeed, at least four other courts have concluded in similar cases that plaintiffs lacked standing to compel Congress to call a constitutional convention. The Court can dismiss this case on this basis alone. Furthermore, lawsuits seeking to compel legislators (or Congress itself) to take a legislative act are barred by the Speech or Debate Clause, separation of powers principles, and sovereign immunity; and whether the conditions to call a constitutional convention have been met is a nonjusticiable political question that the Constitution commits exclusively to Congress. Finally, Plaintiffs fail to identify a cause of action. Accordingly, Plaintiffs' first amended complaint should be dismissed.

## **BACKGROUND AND UNCONTESTED FACTS**

Article V of the Constitution provides that:

2

> The Congress, whenever two thirds of both houses shall deem it necessary, shall propose amendments to this Constitution, or, on the application of the legislatures of two thirds of the several states, shall call a convention for proposing amendments, which, in either case, shall be valid to all intents and purposes, as part of this Constitution, when ratified by the legislatures of three fourths of the several states, or by conventions in three fourths thereof, as the one or the other mode of ratification may be proposed by the Congress; provided that no amendment which may be made prior to the year one thousand eight hundred and eight shall in any manner affect the first and fourth clauses in the ninth section of the first article; and that no state, without its consent, shall be deprived of its equal suffrage in the Senate.

U.S. Const. art. V (alterations omitted).

Plaintiffs allege that the Defendants and Congress itself have failed to call a constitutional convention, even though, according to Plaintiffs, a sufficient number of states have so requested. As relief, Plaintiffs seek a declaratory judgment to, presumably, compel Congress to act. On September 5, 2022, Plaintiffs filed their first amended complaint, which largely repeats the allegations of their initial complaint. *Compare* 1st Am. Compl., *with* Compl., ECF No. 1.

## **LEGAL STANDARD**

Dismissal pursuant to Rule 12(b)(1) is appropriate when the court lacks jurisdiction to decide the claims alleged in the complaint. Fed. R. Civ. P. 12(b)(1); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). Accordingly, plaintiffs "constantly bear[] the burden of proof that jurisdiction does in fact exist." *Id.* (citing *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)).

Dismissal pursuant to Rule 12(b)(6) is appropriate when a claim fails to state a claim on which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  To survive such a motion to dismiss, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## ARGUMENT

I.  **Plaintiffs Lack Standing Because They Assert, at Most, a Generalized Grievance and Because Any Injury Would Not Be Redressable.**

One "essential" requirement for Article III jurisdiction is that "any person invoking the power of a federal court must demonstrate standing to do so."  *Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013).  Standing requires that "a plaintiff must plead an actual or threatened injury that is fairly traceable to the conduct complained of and likely to be redressed by the relief requested."  *Trinity Indus., Inc. v. Martin*, 963 F.2d 795, 798 (5th Cir. 1992) (citation omitted).

Here, Plaintiffs cannot identify any such injury in fact.  Plaintiffs, who are individuals residing in Texas, devote a single paragraph of their first amended complaint to identifying their purported injuries, and that paragraph states that they:

> have been harmed by the non-action of [Congress] . . . . because of the issues to be brought before the Convention of States are economic in nature affecting not just the State of Texas but the entire nation i.e. The Budget issues and its balance; Spending without a Budget, and other issues who's none address [sic] are endangering our Nation, its member States and all of its citizens.

1st Am. Compl. ¶ 6.  First, the vague assertion that Mr. McCall and Mr. Biedermann are "affect[ed]" by "economic" "issues," potentially relating to "The Budget," is far from a concrete injury. *See Laufer v. Mann Hosp., L.L.C.*, 996 F.3d 269, 272 (5th Cir. 2021) (holding that a plaintiff could not establish an Article III injury where she could not show "how the alleged violation affects her in a concrete way"); *see also Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (an Article III injury must be "actual and imminent, not conjectural or hypothetical").

4

Nor, even if they could identify a current injury, could Plaintiffs show that it is likely to be redressed by the calling of a constitutional convention. Plaintiffs would only obtain relief from their unspecified economic issues if a long chain of speculative events occurred, beginning with any resulting constitutional convention proposing any amendments which would address Plaintiffs' injury, rather than leaving it the same or worse, and ending with the states actually ratifying those amendments. *See Inclusive Comms. Project, Inc. v. Dep't of Treasury*, 946 F.3d 649, 657-58 (5th Cir. 2019) (rejecting plaintiff's standing on redressability grounds "[b]ecause it's unclear what effect any Treasury action . . . would have . . . it's similarly uncertain that granting [plaintiff] the relief it wants would remedy its injuries"). Accordingly, the complaint should be dismissed for lack of standing.

What really seems to motivate this case, of course, is not Plaintiffs' amorphous economic discontent, but their philosophical disagreement with Congress's course of action. But Plaintiffs' belief that Congress should act differently than it has is no more than a generalized grievance which cannot support standing. The Supreme Court has "consistently held that a plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 573-74 (1992) (citing cases); *see also Lance v. Coffman*, 549 U.S. 437, 439 (2007); *Arizonans for Official English v. Arizona*, 520 U.S. 43, 64 (1997) ("An interest shared generally with the public at large in the proper application of the Constitution and laws will not [create standing]."); *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 217 (1974) (rejecting standing where "[r]espondents seek to have the Judicial Branch compel the Executive Branch to act in conformity with the

Incompatibility Clause, an interest shared by all citizens"); *Trinity Indus.*, 963 F.2d at 798 ("The requirement of an actual injury 'tends to assure that the legal questions presented to the court will be resolved, not in the rarified atmosphere of a debating society, but in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action.'" (quoting *Valley Forge Christian Coll. V. Am. United for Separation of Church and State Inc.*, 454 U.S. 464, 472 (1982))).

Plaintiffs also seek to rely on purported harms to *Texas* from the non-occurrence of a constitutional convention. *See* 1st Am. Compl. ¶ 6 ("[T]he State of Texas . . . ha[s] been harmed . . . . The Texas Legislature and those of the other states in the Union who have legislatively called for an Article V Convention of States are likewise being harmed and injured by a complete nullification of their vote under the Elections Clause of the U.S. Constitution."). But neither Texas nor the Texas Legislature is a party to this lawsuit. "A plaintiff who merely asserts an injury suffered by third parties does not have standing as to that claim." *Preston v. Good Nature Cafe*, 33 F. App'x 704 (5th Cir. 2002); *see also Lujan*, 504 U.S. at 562 ("[T]he 'injury in fact' test requires more than an injury to a cognizable interest. It requires that the party seeking review be himself among the injured."). Accordingly, this Court cannot base jurisdiction on harms that Messrs. McCall and Biedermann allege have occurred to Texas, when Texas has never asserted those harms itself through any signed pleading. *Cf.* 1st Am. Compl. ¶ 6 (citing *Ariz. State Legis. v. Ariz. Indep. Redistricting Comm'n*, 135 S. Ct. 2652, 2659 (2015), a case where the Arizona state legislature itself was the plaintiff).

Mr. Biederman alleges that he is a "duly elected State Representative to the Texas Legislature" and that he "voted for Texas Convention of States resolution." 1st Am. Compl. ¶ 3. Even assuming, *arguendo*, that the refenced resolution constituted a valid request by Texas for a

constitutional convention, Mr. Biederman's status as a legislator does not enable him to bring suit based on injuries to Texas itself.  Even if Texas or the Texas legislature as a whole had a cognizable interest in a constitutional convention, a single legislator like Mr. Biederman would not.  *See* Va. House of Delegates v. Bethune-Hill, 139 S. Ct. 1945, 1953-54 (2019) (noting that "individual members lack standing to assert the institutional interests of a legislature" (citing Raines v. Byrd, 521 U.S. 811, 829 (1997))); *see also* Russell v. DeJongh, 491 F.3d 130, 135 (3d Cir. 2007) ("[O]nce a bill has become law, a legislator's interest in seeing that the law is followed is no different from a private citizen's general interest in proper government."); Chiles v. Thornburgh, 865 F.2d 1197, 1205-06 (11th Cir. 1989) (rejecting a Senator's argument that "as a Senator he has a right to see that the laws, which he voted for, are complied with" as a generalized grievance).

Indeed, for these reasons, courts have uniformly dismissed for lack for standing other lawsuits asserting claims that Congress should call a constitutional convention in response to the purported applications of states.  *See, e.g.*, Mem. Op. at 2, *Smith v. Members of the U.S. House of Reps.*, 15-cv-1831 (D.D.C. 2015), ECF No. 4, attached as Exhibit 1 (plaintiff's belief that Congress should call a constitutional convention was nothing more than a generalized grievance); Order of Dismissal at 1, *Walker v. Members of Congress*, 04-cv-1977 (W.D. Wash. 2004), ECF No. 26, attached as Exhibit 2 (dismissing a lawsuit by a plaintiff seeking to compel Congress to hold a constitutional convention because "[i]t is unambiguously clear that the Court does not have subject matter jurisdiction in this case due to the fact that Plaintiff does not have standing to bring this suit and his complaint raises political questions that are more properly the province of Congress" (citation omitted)), *aff'd*, 05-35023 (9th Cir. 2006); Order at 2, *Walker v. United States*, 00-cv-2125 (W.D. Wash. 2001), ECF No. 36, attached as Exhibit 3 (same); Mem.

Op. & J. at 3, *Sibley v. McConnell*, 16-cv-41 (D.C. 2016), *aff'd*, CAB-2242-15 (D.C. Cir. 2016), attached as Exhibit 4 (dismissing plaintiff's claims seeking a constitutional convention for lack of Article III standing after plaintiff's suit was remanded from federal district court due to lack of standing). The same result should occur here.

Finally, any injury to Plaintiffs would not be redressable because separation of powers principles preclude judicial action compelling Congress to take legislative action, such as calling a constitutional convention. *See Mississippi v. Johnson*, 71 U.S. (4 Wall.) 475, 500 (1866) ("The Congress is the legislative department of the government; the President is the executive department. Neither can be restrained in its action by the judicial department. . . ."); *Hearst v. Black*, 87 F.2d 68, 71-72 (D.C. Cir. 1936) ("[T]he universal rule, so far as we know it, is that the legislative discretion in discharge of its constitutional functions, whether rightfully or wrongfully exercised, is not a subject for judicial interference."); *Hastings v. U.S. Senate*, 716 F. Supp. 38, 41 (D.D.C. 1989) (rejecting injunction against Senate because "[t]he relief sought by plaintiff . . . would be utterly foreign to our system of divided powers"), *aff'd* 1989 WL 122685, at *1-2 (D.C. Cir. Oct. 18, 1989) ("[W]e have not found any case in which the judiciary has issued injunctive or declaratory relief intercepting ongoing proceedings of the legislative branch."). Moreover, none of the Defendants—whether acting alone or together—can call a constitutional convention. Only Congress as a whole has such power. Accordingly, an order as to Defendants would not redress any injury to Plaintiffs from Congress's non-action.

## II. The Speech or Debate Clause and Sovereign Immunity Preclude This Lawsuit Seeking to Compel Legislative Action.

### A. The Speech or Debate Clause and Sovereign Immunity Bar this Lawsuit.

The Constitution's Speech or Debate Clause precludes suing Members of Congress for their performance of legislative duties. *See* U.S. Const. art. I, § 6, cl. 1 ("[F]or any Speech or

Debate in either House, [Senators and Representatives] shall not be questioned in any other Place."). The Speech or Debate Clause is an "absolute bar to interference," and "'reinforc[es] the separation of powers'" and "'insure[s] that the legislative function the Constitution allocates to Congress may be performed independently.'" *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 502-03 (1975) (quoting *United States v. Johnson*, 383 U.S. 169, 178 (1966)). The Clause is therefore read "broadly to effectuate its purposes," *Gravel v. United States*, 408 U.S. 606, 624 (1972) (quoting *Johnson*, 383 U.S. at 180). Although the heart of the Clause is speech or debate on the floor of the House or Senate, it also extends to "the deliberative and communicative processes . . . with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House" as "necessary to prevent indirect impairment of such deliberations." *Id.* at 625.

Here, Plaintiffs here seek precisely what the Speech or Debate Clause prohibits—a court order interfering with legislators' conduct of a task that the Constitution placed within Congress's exclusive province. Plaintiffs request that the Members of Congress named as defendants be compelled to take the legislative action of calling for a constitutional convention. *See* 1st Am. Compl. ¶ 1 ("This complaint seeks to compel the Congress of the United States . . . to call a Convention of States."); 1st Am. Compl. Prayer for Relief ("Declare that the Congress of the United States call for an Article V Convention of States and Thus Order the Congress of the United State [sic] to so Call within 60 days."). This action is clearly within the sphere of legislative activity that the Constitution has assigned exclusively to Congress. U.S. Const. art. V.

Plaintiffs take pains at several points in their amended complaint to emphasize the allegedly "ministerial" nature of Article V. *E.g.*, 1st Am. Compl. ¶ 14. To dismiss this case on Speech or Debate Clause grounds does not require resolving whether the calling of a

constitutional convention would be "ministerial," because ministerial acts which fall within the legislative sphere are still protected by the Clause.  *See MINPECO, S.A. v. Conticommodity Servs., Inc.*, 844 F.2d 856, 858 (D.C. Cir. 1988) (upholding the district court's conclusion that the Speech or Debate clause protected the recording of testimony over plaintiff's assertion that such recording was ministerial because "the proper inquiry is not whether an act can be labelled ministerial or discretionary, but whether the act falls within the legislative sphere").  The Speech or Debate Clause applies to "all 'legislative acts,'" which are "those generally done in a session of the House by one of its members in relation to the business before it."  *McCarthy v. Pelosi*, 5 F.4th 34, 39 (D.C. Cir. 2021), *cert. denied*, 142 S. Ct. 897 (2022) (internal quotation marks and citations omitted).

Nor can Plaintiffs circumvent the Speech or Debate Clause by pursuing declaratory relief when the purpose of that relief is still to compel Congress to act.  *See Pauling v. Eastland*, 288 F.2d 126, 130 (D.C. Cir. 1960) ("[A] declaratory judgment would be as effective an impingement upon and interference with legislative proceedings as a flat injunction would be."), *cert. denied*, 364 U.S. 900 (1960); *see also Williams v. Brooks*, 945 F.2d 1322, 1327-28 (5th Cir. 1991) (noting that in *Doe v. McMillan*, 412 U.S. 306 (1973), the Supreme Court found that where the Speech or Debate Clause barred claims against legislators, it also barred declaratory relief).

Likewise, the defendants, all sued in their official capacities,[2] are protected from suit by sovereign immunity.  Official capacity suits against federal employees are treated as suits against

_____

[2] Plaintiffs do not state that they are seeking to bring individual capacity claims, nor do they indicate that they have performed service as required for such claims, *see* Fed. R. Civ. P.

the United States, *see Kentucky v. Graham*, 473 U.S. 159, 165-67 (1985), and the United States

may not be sued except to the extent it has consented to suit by statute; otherwise, it is entitled to

sovereign immunity, *United States v. Testan*, 424 U.S. 392, 399 (1976). Such a waiver of

sovereign immunity cannot be implied but must be unequivocally expressed, and such a waiver

is a prerequisite for subject matter jurisdiction. *United States v. Mitchell*, 445 U.S. 535, 538

(1980). These principles bar lawsuits, like this one, seeking to compel legislators to take

legislative action. *See Rockefeller v. Bingaman*, 234 F. App'x 852, 855-56 (10th Cir. 2007)

(affirming dismissal of suit against Senator and Representative in their official capacities on

sovereign immunity grounds); *see also Voinche v. Fine*, 278 F. App'x 373, 374-75 (5th Cir.

2008) (sovereign immunity barred suit against Members of Congress for failure to take official

action in response to plaintiff's claims). Plaintiffs fail to identify any applicable waiver of

sovereign immunity, and, therefore, the Court lacks jurisdiction over Plaintiffs' suit.

### B. **Plaintiffs Did Not Sue Congress, But If They Had Such Claims Would Fail for the Same Reasons.**

Finally, Plaintiffs here have only raised claims against the four named defendants, not

against Congress as an entity. *See* Caption of 1st Am. Compl. (listing only four individuals as

defendants), Civil Cover Sheet, ECF No. 1-2 (same). *Contra* 1st Am. Compl. ¶ 6 (referring to

"defendant, the Congress"); 1st Am. Compl. ¶ 10 ("This Court has jurisdiction over the

Defendants because they are Article I chambers under the Constitution of the United States of

America."). But even if Plaintiffs intended to raise any claims directed at Congress as an entity,

those claims would fail for the same reasons—the Speech or Debate Clause and sovereign

---

4(i)(3) and Fed. R. Civ. P. 4(e), or that personal jurisdiction would exist for such claims, but in
any event such claims would be improper when the relief they seek is declaratory and would
essentially run against the government as an institution.

immunity equally preclude such an action against Congress itself.  *See, e.g.*, *McLean v. United States*, 566 F.3d 391, 401 (4th Cir. 2009), *abrogated on other grounds by Lomax v. Ortiz-Marquez*, 140 S. Ct. 1721 (2020) (holding that the court lacked jurisdiction to hear a suit against Congress because "sovereign immunity extends to the United States Congress when it is sued as a branch of the government"); *Rockefeller*, 234 F. App'x at 855-56 (holding that "[s]overeign immunity forecloses [the plaintiff's] claims against the House of Representatives and Senate as institutions, and Representative Pearce and Senator Bingaman as individuals acting in their official capacities"); *Keener v. Congress*, 467 F.2d 952, 953 (5th Cir. 1972) (affirming the dismissal of a suit against Congress due to "sovereign immunity, and [the fact] that no cause of action lies to compel Congress to exercise its discretion to legislate on a purely political question").

In addition, as previously noted, *supra* Part I (addressing lack of redressability), separation of powers concerns arise when courts are asked to compel Congress to act.  *See, e.g.*, *Bd. of Educ. of Kiryas Joel Vill. Sch. Dist. v. Grumet*, 512 U.S. 687, 703 (1994) ("[A] legislature's failure to enact a special law is itself unreviewable[.]"); *Newdow v. U.S. Congress*, 328 F.3d 466, 484 (9th Cir. 2003) ("[T]he federal courts lack jurisdiction to issue orders directing Congress to enact or amend legislation."), *rev'd on other grounds, Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1 (2004); *Hearst*, 87 F.2d at 71 ("[T]he universal rule, so far as we know it, is that the legislative discretion in discharge of its constitutional functions, whether rightfully or wrongfully exercised, is not a subject for judicial interference.").

## III. The Calling of a Constitutional Convention Is a Nonjusticiable Political Question Explicitly Committed to Congress in the Constitution.

A case presents a nonjusticiable political question "where there is 'a textually demonstrable constitutional commitment of the issue to a coordinate political department; or a

lack of judicially discoverable and manageable standards for resolving it . . . ." *Nixon v. United States*, 506 U.S. 224, 228 (1993) (quoting *Baker v. Carr*, 369 U.S. 186, 217 (1962)).  For example, in *Nixon v. United States*, the Supreme Court concluded that whether the Impeachment Trial Clause, Art. I, § 3, cl. 6, required the entire Senate (instead of a committee thereof) to hear evidence in an impeachment trial presented such a nonjusticiable political question.  The Supreme Court stressed that the conduct of impeachment proceedings is textually committed to the Senate and the Constitution does not provide any judicially manageable standards for review of the Senate's conduct of such proceedings.  *See generally id.*

Here, the Constitution has likewise assigned to Congress the power to convene a convention when it determines that two thirds of the states have applied.  Article V provides that "[t]he Congress, whenever two thirds of both houses shall deem it necessary, shall propose amendments to this Constitution, *or, on the application of the legislatures of two thirds of the several states, shall call a convention for proposing amendments*, . . . ."  U.S. Const. art. V (emphasis added) (alterations omitted).  The text of Article V makes clear that it is *Congress* and Congress alone to which the Constitution commits the power of calling a convention.  Second, Article V provides no further guidance on how Congress should determine whether two thirds of the states have applied.

Contrary to any implication by Plaintiffs that Congress's role in calling a constitution convention is somehow "ministerial" and thus that the political question doctrine does not apply, 1st Am. Compl. ¶¶ 5, 12, 14, the Supreme Court has previously analyzed other portions of Article V and concluded that they presented a nonjusticiable political question.  In *Coleman v. Miller*, the Supreme Court considered provisions on the ratification of proposed constitutional amendments, and concluded that both the question of whether a state legislature could ratify an

amendment that it had previously rejected and the question of whether a proposed amendment could be ratified 13 years after it was proposed were nonjusticiable political questions left to Congress—not the courts—to decide. 307 U.S. 433, 450, 453-54 (1939). Similarly, other courts have recognized that the calling of a constitutional convention is a political question. *See, e.g.*, Order of Dismissal at 1, *Walker v. Members of Congress*, 04-cv-1977 (W.D. Wash. 2004), ECF No. 26, attached as Exhibit 2 (dismissing a lawsuit by a plaintiff seeking to compel Congress to hold a constitutional convention because "[i]t is unambiguously clear that the Court does not have subject matter jurisdiction in this case due to the fact that Plaintiff does not have standing to bring this suit and his complaint raises political questions that are more properly the province of Congress" (citation omitted)); Order at 2, *Walker v. United States*, 00-cv-2125 (W.D. Wash. 2001), ECF No. 36, attached as Exhibit 3 (same). Accordingly, the Court should dismiss this case as nonjusticiable.

## IV.    Plaintiffs Lack Any Cause of Action.

In addition, Plaintiffs' complaint fails to state a claim upon which relief can be granted because they fail to identify any cognizable cause of action against individual Members of Congress to enforce the provisions of Article V of the Constitution.

## V.    The Court Need Not Address Plaintiffs' Attempt to Join Texas to Resolve This Motion.

Plaintiffs state that they "find it necessary to join the State of Texas as a necessary party plaintiff to this Complaint." 1st Am. Compl. ¶ 4. Although Plaintiffs have not filed a Rule 19 motion for Texas's joinder, they have filed a motion seeking "the entry of a default ORDER under FRCP Rule 55(b)(2)" against the state of Texas, and apparently anticipate that that order will "join[] the State as a party Plaintiff" and "find that one or more of the Plaintiffs have

standing." Pls.' Mot. Default Order & Join. Texas as Pl. (Pls.' Mot. Default Texas), ECF No. 27. Defendants have separately responded to that motion.

For the purposes of this motion to dismiss, Defendants note only that this Court can grant Defendants' motion to dismiss without resolving Plaintiffs' motion regarding Texas. Threshold issues like standing and jurisdiction should be resolved prior to issues regarding joinder. *See Am. Home Mortg. Servicing, Inc. v. Donovan*, No. 3:10-CV-1936-M, 2011 WL 2923978, at *4 (N.D. Tex. July 20, 2011) (because the court dismissed based on a lack of standing and jurisdiction, it did not decide the joinder issue); *Cox v. City of Dallas*, 256 F.3d 281, 303 (5th Cir. 2001) ("Standing is a jurisdictional doctrine that the Supreme Court has held must be decided before the merits of a case."). Indeed, Plaintiffs' suggestion that they seek to add Texas as an involuntary participant in this lawsuit in order to address Mr. McCall's and Mr. Biedermann's lack of standing demonstrates exactly why the courts should address threshold issues first. Any other rule would permit would-be-plaintiffs lacking any injury to circumvent the requirements of Article III. *See Preston v. Good Nature Cafe*, 33 F. App'x 704 (5th Cir. 2002) ("A plaintiff who merely asserts an injury suffered by third parties does not have standing as to that claim.").

## CONCLUSION

For the above-stated reasons, Plaintiffs' claims should be dismissed.

Dated: September 19, 2022                    Respectfully submitted,

                                             BRIAN M. BOYNTON
                                             Principal Deputy Assistant Attorney General

                                             LESLEY FARBY
                                             Assistant Branch Director

/s/ Rebecca M. Kopplin
REBECCA M. KOPPLIN
Trial Attorney (California Bar No. 313970)
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, D.C.  20005
Telephone:  (202) 514-3953
Email: Rebecca.M.Kopplin@usdoj.gov

*Counsel for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on September 19, 2022, I electronically filed the foregoing with the Clerk of

Court using the CM/ECF system, which will serve the following CM/ECF participants:

Francisco R. Canseco
19 Jackson Court
San Antonio, TX 78230
frcanseco@gmail.com


*/s/ Rebecca Kopplin*
Rebecca Kopplin